UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRINA N. KANGHAWA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 21-1386 (PLF) |

OPINION AND ORDER

Plaintiff Brina N. Kanghawa ("Ms. K") entered the United States in February 2019 to seek asylum from persecution in her home country of Cameroon. See Complaint for Declaratory and Injunctive Relief and Mandamus ("Compl.") [Dkt. No. 1] at ¶ 54. U.S. Immigration and Customs Enforcement ("ICE") apprehended Ms. K and placed her in expedited removal, at which time Ms. K expressed fear of persecution and stated that she intended to apply for asylum. Id. at ¶ 55-56. ICE released her from custody and issued a Notice to Appear ("NTA"). Id. at ¶ 56. Beginning in January 2020, Ms. K attempted to apply for asylum by filing a Form I-589 (Application for Asylum and Withholding of Removal) with both the U.S. Citizenship and Immigration Services ("USCIS") and the Executive Office for Immigration Review ("EOIR"). See id. at ¶ 3. Both agencies rejected Ms. K's application due to an apparent administrative oversight, which stemmed from the fact that ICE never filed the NTA with an immigration court. Id. at ¶ 4; see also Defendants' Motion and Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mot.") [Dkt. No. 17] at 3-4 (page

numbering based on ECF stamp).  Ms. K filed a civil complaint in this Court on May 19, 2021, seeking declaratory and injunctive relief and attorney's fees.  See Compl. at 25-26.

On August 27, 2021, defendants U.S. Department of Homeland Security et al. moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  See Def. Mot.  Defendants argue that because Ms. K now has successfully applied for asylum, her application was accepted as timely, and she was granted employment authorization, the relief sought by Ms. K is moot.  See id. at 5; see also Joint Status Report ("JSR") [Dkt. No. 20] at 3-4.  Ms. K opposes the motion and maintains that the action is not moot because she has a live claim for declaratory relief.  See JSR at 3.  Upon careful consideration of the parties' written submissions, the relevant legal authorities, and the entire record in this case, the Court will grant defendants' motion to dismiss.[1]

## I.   BACKGROUND

### A.  U.S. Asylum Laws

The Immigration and Nationality Act ("INA"), enacted in 1952, provides that any noncitizen who is physically present in the United States (whether or not at a designated port of arrival), may apply for asylum irrespective of their immigration status.  8 U.S.C. § 1158(a)(1).  The INA further states that "[t]he Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a)."  Id. § 1158(d)(1); see also

---

[1] The Court considered the following documents and accompanying attachments and exhibits in resolving the pending motion:  Complaint for Declaratory and Injunctive Relief and Mandamus ("Compl.") [Dkt. No. 1]; Defendants' Motion and Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mot.") [Dkt. No. 17]; Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") [Dkt. No. 12]; Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Def. Reply") [Dkt. No. 18]; and the parties' Joint Status Report ("JSR") [Dkt. No. 20].

Huisha-Huisha v. Mayorkas, 27 F.4th 718, 724 (D.C. Cir. 2022) ("'Asylum' relief is a discretionary protection that the Attorney General 'may grant' to aliens who meet the statutory definition of 'refugee' because of their 'well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion' in their home country." (quoting 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42))).  A noncitizen generally has one year from the date of his or her arrival in the United States to file for asylum.  See 8 U.S.C. § 1158(a)(2)(B).

"In general, an alien may apply for asylum in one of three ways: (1) if she is not in any kind of removal proceeding, she may file an affirmative application for asylum, see 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.1(a)(1); (2) if she is subject to regular removal proceedings under 8 U.S.C. § 1229a, she may file a defensive application for asylum as a defense to removal, see 8 U.S.C. § 1229a(c)(4); 8 C.F.R. § 208.2(b); or (3) if she is subject to expedited removal proceedings under 8 U.S.C. § 1225, she may also file a defensive application for asylum as a defense to expedited removal, see 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 208.30(f)." O.A. v. Trump, 404 F. Supp. 3d 109, 121 (D.D.C. 2019); see also M.M.V. v. Garland, 1 F.4th 1100, 1104-05 (D.C. Cir. 2021).  An asylum applicant may apply for employment authorization 180 days after the date of filing his or her application for asylum.  See 8 U.S.C. § 1158(d)(2).

### B.  Ms. K's Asylum Application

Ms. K entered the United States on February 28, 2019 at the San Ysidro Port of Entry in San Diego, California to seek asylum from persecution in her home country of Cameroon.  See Compl. at ¶¶ 54-55.  ICE apprehended Ms. K and placed her in expedited removal, at which time Ms. K expressed fear of persecution and stated that she intended to apply for asylum.  Id. at ¶ 55-56.  ICE released her from custody and issued an NTA, "requiring her to

notify the Office of the Immigration Judge in Memphis, TN ("Memphis Immigration Court") of any address change." Id. at ¶ 56. "The ICE Nashville Field Office also sent a notice to the Memphis Immigration Court that Plaintiff was released from ICE Custody and paroled into the United States pursuant to 8 C.F.R. § 212.5 as a noncitizen 'whose continued detention is not in the public interest as determined by those officials.'" Id. at ¶ 57.[2]

        Ms. K first attempted to apply for asylum with the Memphis Immigration Court on or around January 31, 2020. See Compl. at ¶ 58. On or around February 13, 2020, the Memphis Immigration Court rejected her I-589, stating that "Immigration Court cannot schedule a hearing or take any action unless the Department of Homeland Security has filed the charging document with the Immigration Court." Id.; see also 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court."). Ms. K proceeded to file her I-589 with USCIS on three more dates, all of which were rejected, Compl. at ¶ 60, and attempted in April 2020 to apply for employment authorization, which was rejected as well, see id. at ¶ 61. On or around November 4, 2020, Ms. K sent a letter to the Chief Appellate Immigration Judge of the Board of Immigration Appeals ("the Board"), "summarizing her attempts to apply for asylum with EOIR and USCIS and requesting her case be processed through any agency." Id. at ¶ 67. In response, the Board rejected her submission because her registration number, also known as her "A-Number," was not listed in the EOIR database. See id. at ¶ 68.

---

[2]     8 C.F.R. § 212.5 provides that the Department of Homeland Security ("DHS") may grant parole to certain individuals "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Because both agencies repeatedly rejected her applications for asylum, Ms. K was unable to comply with the statutory deadline to apply for asylum within one-year from the date of arrival in the United States to file for asylum.  See Compl. at ¶ 9; 8 U.S.C. § 1158(a)(2)(B).  Furthermore, because a noncitizen may only apply for employment authorization once their asylum application has been pending for 180 days, she was unable to obtain an employment authorization document ("EAD") during this time.  See Compl. at ¶ 10; 8 C.F.R. § 208.7.

Ms. K initiated this lawsuit on May 19, 2021, alleging that defendants' failure "to take any necessary agency action that would allow any adjudicating agency to have jurisdiction over her application" deprived her of the right to apply for asylum and have her claim heard, in violation of the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment.  Compl. at ¶¶ 1, 12.  Ms. K sought declaratory and injunctive relief and mandamus pursuant to the Mandamus Act.  See id. at ¶¶ 12, 104-09.  Ms. K requested that the Court compel defendants to take necessary action to allow "an adjudicating agency to have jurisdiction to accept her asylum application, ensure her application is accepted as timely under the one-year statutory filing deadline, and ensure she can seek employment authorization within a reasonable time period."  Id. at ¶ 13.  Approximately one month after commencement of this action, ICE filed the Notice to Appear with EOIR, bringing Ms. K's application within EOIR's jurisdiction.  See Def. Mot. at 5.

Pursuant to the Court's Minute Order of May 31, 2022, the parties submitted a Joint Status Report updating the Court on the status of Ms. K's application for asylum and application for employment authorization on June 10, 2022.  See JSR at 1.  The parties proffered that on July 2, 2021, the Memphis Immigration Court accepted Ms. K's application for asylum and "ICE also filed a notice with the Immigration Court that Plaintiff was entitled to have her

asylum application considered timely in light of the one-year statutory filing deadline." Id. Ms. K's hearing is now scheduled for September 23, 2024, "when the Immigration Court will hear the merits of her claims for asylum and other relief and decide whether to grant her relief from removal." Id. at 2. On or about January 12, 2022, USCIS approved Ms. K's application for employment authorization. See id. According to the parties, "USCIS presumably corrected Plaintiff's EAD clock by using one of her earlier attempted filings for asylum, thereby having her accrue the necessary waiting period to apply for an EAD, and expedited the processing of her [application for employment authorization]." Id.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See, e.g., Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). The plaintiffs bear the burden of establishing that the Court has jurisdiction. See Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).

In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017); Gutierrez v. U.S. Dep't of Homeland Sec., Civ. No. 18-1958, 2019 WL 6219936, at *3 (D.D.C. Nov. 21, 2019). Although the Court must grant plaintiffs the benefit of all reasonable inferences, the Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept plaintiffs' legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012). Finally, in determining whether plaintiffs have met the

burden of establishing jurisdiction, the Court may consider materials beyond the pleadings where appropriate. Am. Nat'l Ins. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011); Cumis Ins. Society Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

The doctrine of mootness, on which defendants' arguments rely, is a jurisdictional inquiry. Safari Club Int'l v. Jewell, 842 F.3d 1280, 1285, 1287 (D.C. Cir. 2016); Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994) ("[M]ootness goes to the jurisdiction of this court."). Accordingly, motions to dismiss for mootness are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Han v. Lynch, 223 F. Supp. 3d. 95, 102 (D.D.C. 2016). "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies." J.D. v. Azar, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (quoting Honeywell Int'l v. Nuclear Regulatory Comm'n, 628 F. 3d 568, 576 (D.C. Cir. 2010)). Once a court determines that a claim is moot, it lacks jurisdiction to entertain the claim and must dismiss it. Han v. Lynch, 223 F. Supp. 3d at 103.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d at 576 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)); see also 13B Edward H. Cooper, Federal Practice and Procedure § 3533.2.1 (3d ed. 2022) ("If full relief is accorded by another tribunal—whether judicial, administrative, arbitral, or a combination —a proceeding seeking the same relief is moot."). "Under Article III of the United States Constitution [courts] may only adjudicate actual, ongoing controversies." Reid v. Hurwitz, 920 F.3d 828, 832 (D.C. Cir. 2019) (quotations omitted). Changed circumstances can moot a previously valid claim. "Under the mootness doctrine, [courts] cannot decide a case if

7

'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Id. (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

### III.  DISCUSSION

The Court concludes that this case is moot and therefore the Court does not have subject matter jurisdiction.  Ms. K's claims arise from her inability to apply for asylum, to comply with the one-year statutory deadline, and to obtain employment authorization within a reasonable time.  See Compl. at ¶ 8-10.  Since the time Ms. K filed her complaint on May 19, 2021, these conditions have materially changed in a way that affect whether any live controversy persists between the parties.  Ms. K has now applied for asylum, her application was accepted as timely, she received notice of a scheduled hearing, and she has been granted employment authorization.  See JSR at 1-2.  The parties' joint status report includes the following factual proffers jointly agreed to by the parties:

- On July 2, 2021, the Memphis Immigration Court accepted Plaintiff's application for asylum, Form I-589.

- On August 5, 2021, ICE also filed a notice with the Immigration Court that Plaintiff was entitled to have her asylum application considered timely in light of the one-year statutory filing deadline.

- Plaintiff's merits hearing is scheduled for September 23, 2024, when the Immigration Court will hear the merits of her claims for asylum and other relief and decide whether to grant her relief from removal.

- USCIS presumably corrected Plaintiff's EAD clock by using one of her earlier attempted filings for asylum, thereby having her accrue the necessary waiting period to apply for an EAD, and expedited the processing of her [application for employment authorization].

See JSR at 1-2.

8

The only remaining relief that Ms. K seeks is a declaratory judgment that defendants' actions and agency policy violated her constitutional and statutory rights. See JSR at 3. But declaratory judgment is a forward-looking remedy; it is a statement of "the rights and other legal relations" of the parties, see 28 U.S.C. § 2201, that is generally sought when an actual controversy exists but before it has "reached the stage at which either party may seek a coercive remedy." See Malibu Media, LLC v. Parsons, Civ. No. 12-1331, 2013 WL 12324463, at *9 (D.D.C. May 31, 2013); see also 10B MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2751 (4th ed. 2022) (In actions for declaratory judgment, "[t]he jurisdiction of the courts is not expanded and requests for declaratory judgments may be heard only in cases that otherwise are within their jurisdiction."). And this Court has made clear that "[d]eclaratory judgments are discretionary, appropriate when there is 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Gutierrez v. U.S. Dep't of Homeland Sec., 2019 WL 6219936, at *5 (quoting Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC, 313 F. Supp. 3d 40, 45 (D.D.C. 2018)). In the context of the changed factual circumstances in this case, the relief that Ms. K seeks would not resolve any question that would "presently affect the parties' rights [or] have a more-than-speculative chance of affecting them in the future." Reid v. Hurwitz, 920 F.3d at 832 (quoting Clarke v. United States, 915 F.2d at 70). There are no facts showing that any of Ms. K's rights in the future would be affected by a declaratory judgment that defendants' prior conduct was unlawful. See JSR at 1-2.

Moreover, there is no evidence that any of the exceptions to the mootness doctrine apply here. First, Ms. K's complaint does not involve an alleged injury that is "capable of repetition yet evading review." See United States v. Weston, 194 F.3d 145, 148 (D.C.

9

Cir. 1999). This exception applies only where "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration" and where "there is a reasonable expectation that the same complaining party will be subject to the same action again." See id.; see also Planned Parenthood of Wisconsin, Inc. v. Azar, 942 F.3d 512, 517 (D.C. Cir. 2019). Second, this is not a circumstance in which voluntary cessation of the challenged practice creates an exception to the mootness doctrine. See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). "For the [voluntary cessation] exception to apply, the [defendants'] voluntary cessation must have arisen because of the litigation." Sze v. Immigration and Nationality Service, 153 F.3d 1005, 1008 (9th Cir. 1998) (emphasis in original); see also Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 13 (D.D.C. 2019). There is no evidence that that is the case here.

Furthermore, plaintiff effectively concedes that the alleged wrongdoing by the government was the result of an apparent administrative oversight "due to ICE never having filed her NTA with an immigration court to initiate removal proceedings nor having vacated the expedited removal order." Compl. at ¶ 4. The Memphis Immigration Court has now scheduled Ms. K's merits hearing and "corrected Plaintiff's EAD clock." JSR at 2. "[T]here is no reasonable expectation that the alleged violation will recur." Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d at 13 (internal quotations omitted). Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss [Dkt. No. 17] is GRANTED and plaintiff's complaint is dismissed in its entirety; and it is

FURTHER ORDERED that the Clerk of the Court shall remove this case from the docket of the Court.  This is a final appealable order.  See FED. R. APP. P. 4(a).

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 30, 2022